## BRADFORD *vs.* HARPER ET AL.

1. When a vendee holds only a bond for titles to be made on full payment of the purchase money, a purchaser from him cannot be regarded in equity as a *bona fide* purchaser for valuable consideration without notice, although he saw in the vendee's possession his notes for the purchase money; the conditional bond is sufficient to charge the purchaser with notice of the vendor's lien for the unpaid purchase money, and to put him on inquiry as to the facts.

2. If the vendor transfers to a stranger the notes given for the purchase money, and accepts for them a bill of exchange, his lien on the land is gone, and the vendee, on making full payment to the transferree, becomes entitled to an absolute conveyance; but if the transferree was acting as agent of the vendee, or was jointly concerned with him in the purchase, and made the arrangement for their joint benefit, without an express promise on the part of the vendor to receive the bill of exchange in absolute payment of the notes, and thereby to abandon his lien, the land is still bound to the vendor for the payment of the purchase money on the non-payment of the bill.

3. When the vendee files a bill to compel a conveyance, and to enjoin the vendor's action at law to recover possession of the land, the tenant in possession, being directly interested in perpetuating the injunction, is not a competent witness for the complainant.

ERROR to the Chancery Court of Tallapoosa.
Heard before the Hon. WYLIE W. MASON.

THIS bill was filed by the defendants in error, who are the heirs-at-law of John Harper, deceased, against Jacob T. Bradford and others; its object was, to obtain a title from said Bradford to a certain tract of land, and to enjoin him from further proceedings at law to recover possession thereof. The bill alleges, that said land belonged to said Bradford and one Nathaniel Killough, either jointly or as partners, and was sold by them in 1837, to one Daniel Neves for $1200; that $100 of the purchase money was paid in cash by said Neves, and for the balance he executed his promissory note to said Killough, who thereupon executed a title bond to said Neves, conditioned to make him an absolute conveyance upon full payment of said note; that said Neves afterwards sold the land to one James Murray, and transferred the said title bond; that said Murray afterwards sold the land to said

John Harper, and by agreement between them and said Neves, Murray transferred said title bond back to Neves, who thereupon executed his individual title bond to said Harper ; that said Neves has since taken up his said title bond, and instead thereof has assigned Killough's said bond to complainants ; that the possession of the land passed with each transfer of the title bond, and valuable improvements have been erected ; that said Bradford transferred Neves' said note for the purchase money, before its maturity, to one Job Taylor, and took from him in full payment and satisfaction thereof certain promissory notes and bills of exchange on other persons, and also a tract of land ; that said Neves afterwards paid the full amount of said notes to said Job Taylor, and that said Harper's note has also been paid in full; that said Bradford has commenced an action of ejectment for the recovery of said land, and has the legal title thereto.

The answer of Bradford, who is the only material defendant, admits the; sale from said Killough to Neves, and states that he had previously sold said land to Killough, and had given him a bond for title ; that he had no interest whatever in the land at the time of Killough's said sale to Neves, except to aid Neves, at his request, in making the purchase ; that he afterwards purchased from Killough Neves' said note for the purchase money, and agreed to fulfil his contract with Neves, of which the latter was informed ; that said Neves and Job Taylor were partners in the purchase of said land from Killough ; that afterwards, on demanding payment of said note from Neves, the latter informed the agent, through whom the demand was made, that said Job Taylor, who was then absent, was his partner in said land, and when he returned they would pay said note; that respondent afterwards called personally on said Taylor, and demanded payment of said note, when said Taylor informed him that he had not then money on hand to pay said note, and proposed to give a bill of exchange with good endorsers, which respondent accepted ; that said bill was afterwards protested for non-payment, and respondent subsequently obtained a judgment on it against all the parties for about $1200, which judgment remains unpaid except as to about $200 collected out of one Young's estate, all the parties thereto being dead, or insol-

vent, or discharged under the bankrupt law. He insists that the acceptance of said bill of exchange was not a payment of said note, but only a change in the mode of payment ; denies all knowledge of the several sales and transfers mentioned in the bill ; and offers to convey a good title to the land on receiving full payment of the purchase money yet due and unpaid.

The proof, so far as it is material to an understanding of the case, is stated in the opinion.

The chancellor held, " that Bradford's answer, when taken in connection with the proof, clearly showed that his lien upon the land was lost by the acceptance of the bill of exchange, and that Harper was a *bona fide* purchaser for valuable consideration without notice, and therefore his equity was superior to Bradford's." He therefore granted the relief prayed by the bill, and his decree is now assigned for error.

WHITE & PARSONS, for the plaintiff in error :

1. It is clear that the vendor of land, who takes a note for the purchase money, and gives bond for title when it is paid, retains a lien on the land which will pass to the assignee of the note, or transferree, unless it is expressly agreed that it shall not.—Haley v. Bennett, 5 Port. 452 ; Chapman v. Chunn, 5 Ala. 397 ; Roper v. McCook, 7 *ib*. 318.

2. The next question is, whether, in the case made by the record, the defendant Bradford, who is the holder of the note given for this land, has lost this lien. The bill charges that one Job Taylor paid off this note in full, to Bradford, by giving him other notes, or a bill of exchange, and a piece of land. The answer denies that the note was paid off, and gives the true history of the transaction. The answer shows it was a change in the mode or manner of payment merely, and not a payment. The bill of exchange was taken to raise money, and was made payable at the Bank, where the parties expected to get it discounted. It was not paid by the parties to it. There was no agreement that the bill should be taken in payment of the $1100 note charged in the bill, and Bradford denies there was any, and there was no proof of any.— It is not the note, but the debt, which constitutes the lien, and this was put into a new form by taking the bill, and ev-

idenced by a new paper. The right of the vendor does not depend upon the fact that the debt is evidenced by a note, but because the debt was due; the right of a creditor to set aside a gift by a father to his son, is not lost by his giving up three several notes which evidenced the father's indebtedness to him, and taking another new note for the full amount.—Moore v. Spence, 6 Ala. 506. If this is the effect of the arrangement between Bradford and Job Taylor, then Neves was entitled to a deed to the land, the instant after it was made, and that too without any regard to whether he had paid for it or not. This is the very evil which this court says should be prevented, in Roper v. McCook, 7 Ala. 324, viz., Neves might hold the land without paying anything for it.

Some stress is laid on the fact, that a bill of exchange was taken in lieu of the note given up to Taylor, the partner of Neves, (as Bradford's answer charges, and as the proof made by Sawyer and Morris clearly establishes,) with other parties to it, and on which Neves was not bound ; but this can have no weight. Suppose this bill of exchange had been taken in the first instance, without Neves being a party to it, could Neves assert that Killough had no lien ? Clearly not. If Killough had made a deed, then, perhaps, the lien would be gone, or waived, by taking the bill of exchange (3 Ala. 302; 5 Ala. 399); but here the express condition of the bond, " to make title when the money is paid," would be an unanswerable argument against such a construction. Is it not equally unanswerable when applied to the facts of this record ? What was Bradford's object? It was to get the debt, the money, not another promise to pay it merely. This he had already, and there is nothing in the record to show that, by reason of insolvency, or the apprehension of it, on the part of Neves, Bradford had any occasion to change it. The bill does not pretend there was anything like this.— Again ; why was not the deed called for at the time ? Why was not some showing given that the purchase money was paid up ? All these are strongly persuasive to show that it was not regarded, at the time, as a payment. But the case on this point seems to be put at rest, by a recent decision of this court, in which it said, " the lien will not be lost by the assignee extending the day of payment, and taking a new note

for the purchase money in his own name, but will continue to attend the debt until it is paid or extinguished, or the lien itself is destroyed by contract between the parties."—Conner v. Banks, 18 Ala. 42. Giving up the note does not extinguish the debt. " What amounts to a payment is a question of law, depending upon the facts and circumstances of the case."—Foreman v. Hardwick, 10 Ala. 327.

Another strong circumstance is evidenced by this record. The bill charges that the note for $1100 was paid off by Taylor, in the manner already considered, before it was due, and that Neves paid it off to Taylor in full, in cash, before it was due, and that the bill of exchange was given at the time it was done. The answer of Bradford shows that the transaction with Taylor was about seventeen months after the note was due ; and the proof of the witness Charles Stone shows that the bill of exchange is dated on the 7th day of June, 1839. This shows the allegations of the bill, in these two particulars, are false, in the most clear and convincing manner. The bill charges that Neves paid the note to Taylor in cash ; the answer denies all knowledge of it, and calls for proof, but none is made. The witness Murray (and perhaps Land) speaks of Neves saying he had paid it in land ; but their proof on this point was ruled out, and very properly, by the chancellor.

It is also insisted that the witness Land is incompetent by reason of interest. The bill charges he is one of the defendants in the action of ejectment, and his answer admits it. If this injunction is made perpetual, he is relieved from liability for costs and damages by way of rent. Mrs. Harper, his codefendant, might with equal propriety become a witness. Her interest differs only in degree. There is no order authorizing the plaintiffs below to take the deposition of this witness, who is a defendant to this bill. Both these grounds were stated in the cross interrogatories, and were overruled by the court below, as appears by the decree: James Murray, another defendant to this bill, was also examined, and objected to by Bradford, because of interest, and also for want of a proper legal order. These were overruled in the court below, and are now insisted on. Murray's interest is clearly shown ; he bought the land of Neves, and sold it to John Harper, the ancestor of the several complainants in this bill, and gave his

bond for titles. After the death of John Harper, Murray made an arrangement with Bannister Harper, one of the executors of John Harper, by which he took up his bond, and assigned the bond that Killough had given Neves for titles to Bannister Harper as executor, and agreed with him that he should have no further trouble about the title. This agreement did not relieve him from responsibility, and so the bill charges he has an interest in said land and in said action of ejectment. He is actually the man who sold the land to these complainants, and is now a witness to prove their right to it. It is hardly possible to put a clearer or stronger case of interest than this.

The bill charges that Killough, together with Bradford, sold the land to Neves, and that they were interested as co-partners, at the time, in the land, or each had an interest in it, and they sold it as partners. The answer of B. denies this, and says he had no interest in the land, and did not participate in the sale of it, except possibly to aid Neves at his (Neves') request to make the purchase. This answer is not overturned by proof of the contract or interest charged. The witness Land proves that Bradford said Killough had no interest in the land, and sold for him, &c. There is not a shadow of proof to establish that B. participated in the sale as charged, that is, one holding out offers and inducements to another to purchase, which should estop him, or which amount to a fraud. In the absence of these facts, how can the plaintiffs divest Bradford's title in their favor on a bond given by N. Killough, to which B. is not a party? If it were shown that B. had induced Neves to make the purchase, or had represented the land as Killough's, or that he had done any act by which good faith requires he should be estopped, then there would be some ground for the application. But Bradford denies all such allegations expressly, and says that he is still ready and willing to carry out the agreement he made with Killough—make title when the purchase money is paid. The complainants have failed, therefore, to show such a contract substantially as they have declared upon, and this is a fatal defect, according to the well-settled decisions of this court.— Jordan v. Roney, 23 Ala. 758; 14 ib. 135; Danl. Ch. Pr. 1000; Owens v. Collins, 23 Ala. 837.

Bradford v. Harper et al.

But there is no averment that Killough is insolvent. It is charged that he resides out of this State, and that he has no property within this jurisdiction to respond in damages; but this is not sufficient. It must be shown that he is insolvent. Cave v. Webb, 22 Ala., and authorities cited.

GEO. W. GUNN and B. J. WHATLEY, *contra:*

A vendor's lien is a mere equity, founded on the presumption that he looks to the land as security for the purchase money, and that the land is held in trust for its payment; and as such, whatever overcomes or repels this presumption destroys this equity.—Young v. Wood, 11 B. Mon. 128. Equity holds that the vendor, as a mortgagee, has three distinct remedies : a bill to foreclose and sell the land; an action of ejectment to recover the land; and an action at law to recover the purchase money. But the first remedy cannot be used when the lien has been waived or discharged, and the second will be enjoined whenever the lien has been discharged by any subsequent contract or agreement on the part of the vendor. A vendor's lien may be waived or repelled by acts and circumstances which would not destroy the lien of a mortgage. A subsequent agreement, materially changing the previous rights, remedies and liabilities of the parties, independent of the idea of estoppel, destroys the lien.—Pritchard v. Ingersoll, 11 Ala. 17; Lightfoot v. Strahan, 7 *ib.* 444. A vendor's lien is lost by taking personal security (Foster v. Trustees of Athenæum, 3 Ala. 302 ; White v. Dougherty, Mar. & Yer. 309 ; Brown v. Murphy, 6 Blackf. 272), unless the taking of such security formed a part of the contract of purchase, as in Chapman v. Chunn, 5 Ala. 327. A vendor's lien is also lost in all cases where the vendee, by subsequent agreement, is released or discharged from the payment of the debt by the act of the vendor or his assignee.—Martin v. Lundie, 6 Ala. 427. Nor can the vendor's lien be enforced, at the suit of his assignee, when the note was assigned without recourse (Hall's Ex'rs v. Click, 5 Ala. 363 ; 7 Gill & J. 120); nor, where the vendor has taken a mortgage, and neglected to have the same recorded, can the same be enforced against a subsequent purchaser without notice.—3 Gill & J. 425.

These positions are particularly applicable as between the

original parties to the contract of sale. This equitable lien, however, only exists as against the vendee and those claiming under him with notice (Ridgely v. Iglehart, 3 Bl. 540); while the case made by this record is that of an innocent purchaser without notice. Harper purchased and paid for the land *bona fide*, with the evidence afforded by Neves' possession of the note given for the purchase money, showing that it had been paid; and his vendor (Murray) was also an innocent purchaser without notice. Having thus purchased *bona fide*, without notice, entered into possession, and erected valuable improvements, he is entitled to the protection of a court of equity.—Molloy v. Stodder, 6 Ala. 801; Myers v. Peak's Adm'r, 2 *ib.* 548; Fenno v. Sayre & Converse, 3 *ib.* 458; 7 Wheat. 46; 1 Dev. & Bat. Ch. 333; Mart. & Yerg. 89; 5 Humph. 568; 2 Miss. 110. The rule held in Burns v. Taylor, 23 Ala. 255, that where the condition of the bond was to make title on the issue of a patent, the presumption was 'that the purchase money had been paid, and the vendor's lien was lost in the absence of express notice, applies with full force to this case.

Bradford's acceptance of the bill of exchange from Taylor, Young and others, and his delivery of the note to Taylor, and by the latter to the maker, who was no party to the bill, was a full discharge of the note and of the vendor's lien.—French v. Price, 24 Pick. 13; Fowler v. Bush, 21 *ib.* 230; Scott v. Ray, 18 *ib.* 360; 4 *ib.* 444; 2 Metc. 168; *ib.* 157; Holman v. Barclay, 3 *ib.* 55; Cole v. Lockett, 1 Hill 516; Shaw v. Godhin, 7 N. H. 16; Stearns v. Godfrey, 4 Shep. 158; 2 Dana 91; 11 Gill & J. 11: Bank of Commonwealth v. Ray, 7 J. J. Mar. 272; Reed v. Upton, 10 Pick. 522; Jones v. Kennedy, 11 *ib.* 125; Watkins v. Hill, 8 *ib.* 522; Baker v. Briggs, 8 *ib.* 122; Wood v. Bodwell, 12 *ib.* 268; 6 Mass. 143; 9 Wend. 122; Wiseman v. Lyman, 7 Mass. 286; 13 Mees. & W. 828; 5 Term R. 513; 2 Por. 401; 2 Ala. 747.

The defendant has not placed himself in a position to assert a vendor's lien. To do this, he must become an actor : he cannot ask anything by his answer, except to be dismissed from the court.—Cullum v. Erwin, 4 Ala. 452; Cummings v. Gill, 6 *ib.* 562.

The evidence of the witnesses (Johnson, Land and Morris)

fully overturns the answer, and establishes beyond a doubt that Bradford was interested in the lands at the time of the sale by Killough ; as such, his presence and participation in the sale, and his delivering up the vendee's note, estop him from attempting to assert either an ownership to the land or a lien upon it.—Town v. Needham, 3 Paige's Ch. Rep. 545 ; Steele v. Adams, 21 Ala. 534 ; McCravey v. Remson, 19 ib. 430 ; Burns v. Taylor, 23 ib. 272.

The witness Land was a mere agent or overseer of complainants' testator, and a mere formal party to the bill ; and Murray had been discharged from all liability on account of the title. As they had no interest in the proceedings, each was a competent witness ; and their filing answers does not render them incompetent.—Burns v. Taylor, 23 Ala. 255 ; Bean v. Pearsall, 12 ib. 592 ; Colgin v. Redman, 20 ib. 650.

The defendant's answer is not such an answer as the court will regard with favor ; it is a studied evasion of all the material allegations of the bill, and, in addition to this, it is positively contradicted in several important particulars.

There is no material variance between the allegations and proof.

CHILTON, C. J.—The complainants in the court below, holding a bond for title to be made when the purchase money is paid, ask that Bradford may be enjoined from proceeding at law upon his legal title, asserting that he holds the same as a trustee for them, and praying that he may be divested of the title, and that it may be conferred on them as heirs of a derivative purchaser from Neves, who bought of Killough, and who has made full payment for the land.

Bradford insists that the land has not been fully paid for ; and whether his lien exists or has been abandoned, depends upon the effect of the arrangement entered into between him and Job Taylor, to which we shall presently recur.

Something has been said as respects the protection due to the complainants as *bona fide* purchasers for a valuable consideration,—that they saw Neves, with a bond for title, and with his note which he had taken up, and therefore had the right to conclude that the purchase money had been paid. The decree of the chancellor is based, in part, upon this idea.

But the doctrine does not apply to such a state of facts. The fact that Neves held but a bond for title, and this title to be made on condition of full payment, must charge every one who purchases from him with notice of the lien existing for the purchase money. The possession of the note, formerly held by Killough and transferred to Bradford, would be conclusive against the lien, if it could have been obtained in no other mode than by payment; but we know that the evidences of demands are often changed and renewed, while the debt, of which they are but the evidence, still exists; and such renewals have never been held, *ipso facto*, to discharge the security provided by the principal debtor for the payment of the demand. If Neves had held a deed for the land, then the case would have been very different. There would, in such case, have been nothing to put the complainants on inquiry : seeing that he had a title absolute on its face, the purchaser might well have reposed upon it. But he has a bond, and the inquiry by a prudent purchaser very naturally and readily would be made, why the bond providing for payment, if payment has been made and the obligation for a title has become absolute? Why not either a deed, or an absolute engagement to make a title? The facts, being thus elicited, we must presume, would have been stated to the purchaser, and in this way he would have been informed that, after the note of Neves to Killough fell due, Killough's transferree, who held both the note and the title to the land, under an agreement with Killough to make title when the note was paid, took a bill of exchange drawn by Salmon Washburn on Job Taylor, in favor of Benjamin Young, and endorsed to Bradford, for $1000, and a tract of land from Job Taylor, and delivered over Neves' note to Taylor. The question would then come up, Was this a payment of the demand, so as to work a forfeiture of the lien? and this is the main question for our consideration.

The bill charges that the acceptance of the bill of exchange and surrendering up Neves' note by Bradford, was a payment of the note, and consequently a discharge of the lien. It further charges, that Neves afterwards paid Taylor the amount of the note, which entitled him to be discharged from all further liability on account of the purchase money. These

charges are denied by Bradford, who insists that Neves and Taylor were partners in the purchase of the land, and that the receipt of the bill of exchange from Taylor was but the renewal of the evidence of the debt, taking cumulative security as a means of discounting the bill in bank, and thus raising money.

We think it very clear, that if Taylor was not a partner of Neves, nor acting for him in the matter of the negotiation, and took up this note as an individual transaction, and gave the bill in exchange for it, then the lien of Bradford is gone. Neves, in that event, would be no longer his debtor, but the debtor of Taylor, and upon payment to Taylor of the amount of the note, would discharge the condition of the bond as to the purchase money, and entitle himself to a conveyance. On the other hand, we think it equally clear, that if Neves and Taylor were jointly concerned in the purchase, although by a verbal arrangement between them, and Taylor, acting for both, caused this bill to be executed, and took up the old note, without any express agreement on Bradford's part to receive it in absolute payment, and thereby to abandon the lien, he still has a right to look to the land to pay the balance due.

We must then look to the allegations and proof to solve this question. As we have said, Bradford denies the allegation that the bill was received in payment. The *onus* is therefore cast upon the complainants, to make proof of the fact by two witnesses, or one with strong corroborating circumstances. Let us see whether they have done this.

*Alfred Johnson* testifies, that he learned from conversations with Neves and Taylor that the latter had no interest in the land which is the subject of controversy ; that Bradford told this witness, that he, or he and Killough, had sold the land to Neves for $1100 ; that he also said that Taylor drew his bill of exchange for the amount of the purchase money ; that Benjamin Young and Salmon Washburn were the endorsers on the bill, and he (Bradford) accepted the same, and drew the money on it ; said the bill was drawn for the purpose of taking up the old note for the purchase money,—that he had collected of Benjamin Young $400 or $450, and the balance he himself had to pay into bank ; that the reason why he took the bill, and gave up the old note, was, that he considered Taylor

good; that the bill was taken in exchange for the note on Neves. "He spoke to witness as though he did not know Taylor in the transaction up to the time of drawing the bill of exchange, and said he was satisfied that, inasmuch as Neves, note had been cancelled by the bill, he would lose the purchase money, unless he could discredit the testimony of Neves; said that he looked to the land for the purchase money." This conversation, the witness states, was in 1848 or 1849, or after the commencement of this suit; witness does not give the language, but the substance as near as he remembers, of what Bradford said, and says no one was present at their conversation.

With respect to the testimony of this witness, it will be observed that it consists of the statements of Bradford to him; and allowing him full credit for honesty and fairness, it is manifest that much of what is said as coming from Bradford is incorrect. It is said, for example, that Taylor drew the bill, that Bradford accepted or endorsed it, and that Washburn and Young endorsed it; that it was for the amount of the note of Neves, and that he had collected of Young $400 or $450. Now, none of this conforms to the facts; and whether it results from the failure of the witness correctly to apprehend the conversation, or from want of a proper recollection of the facts detailed, or from a misstatement of them by Bradford, without any conceivable motive for so doing, is not material. By recurring to the record of the suit on the bill, we find the facts above deposed to to be otherwise than here detailed; and this want of correctness shows, that this must have been a loose conversation, not had with any view of making testimony out of it, perhaps had without much regard to accuracy, and, it may be, has been badly remembered, and incorrectly stated. Such conversations are but little to be relied upon as safe guides to truth, and such evidence is always received with caution. That portion of the proof made by this witness, which is most material to the case, seems to be stated rather as a conclusion than as a fact. He says, Bradford spoke as though he did not know Taylor in the transaction up to the time of filing the bill. It would have been more satisfactory, if what he said upon the subject had been stated, so that the court, instead of the witness, might have judged of the effect of the conversation.

*Solomon Land* was examined by the complainants as a witness, and the defendants objected to his testimony on several grounds; one of them being, that he was a party to the suit, and interested on behalf of the complainants. He is one of the parties defendant in the suit which the bill is brought to enjoin—the terre-tenant upon the land which Bradford was proceeding at law to recover. He is, therefore, interested in perpetuating the injunction, which saves him from further defence in the court of law, and from all damages and costs in consequence of a recovery which may otherwise be had against him. The bare statement of the proposition seems to render argument unnecessary to establish his interest. The chancellor erred, therefore, in failing to exclude his deposition, and we must regard the case as though he had not been examined.

*James Murray*, another witness examined on the part of the complainants, states a most significant fact in relation to the subject under investigation. He first purchased this land, and took the assignment from Neves of Killough's bond for title; and he swears that " the consideration of the first transfer was about one thousand dollars, paid by this deponent to Daniel Neves and Job Taylor, jr.," thus showing that Taylor was interested in the land, as otherwise it is not reasonable that he should have received a portion of the purchase money paid by Murray. Indeed, Murray proves that he bought the land of Taylor himself, notwithstanding the bond was to Neves. ·

*Littleberry Morris* proves, that Neves admitted to him that Taylor was jointly concerned in the land, and referred him to Taylor for payment of the $1100 note.

*John Sawyer* proves, that he took the bill to Taylor and demanded payment, and was referred by Taylor to Neves, who, he said, was jointly concerned with him in the land, for payment. This witness says, he stated to Neves that Taylor said it was a joint matter between them, and Neves recognized it as such.

There is a good deal of other testimony, but none of it materially bearing upon the point under consideration, and we do not think that, when properly considered, it weakens materially the force of the answer.

In view of the evidence, and the issue made by the answer,

we do not hesitate to hold, that the complainants have failed to make out their case. We are of opinion, that it would be inequitable to compel Bradford to part with the title until he is paid for the land, and that notwithstanding the arrangement between him and Taylor, changing the evidence of the demand, it still exists, and the lien for its payment is not destroyed. The evidence satisfies us that Taylor was acting for himself and Neves; and the proof fails to sustain the bill, that Neves paid Taylor the amount of the note taken up by him. Indeed, the character of the transaction itself—the fact that Taylor required no endorsement of Neves' note to him, coupled with the other fact that he referred the agent of Bradford to Neves for payment of the bill, sustained by the denial of the answer—very satisfactorily shows, that the giving of the bill was but an effort to raise money to satisfy the demand—was but the substitution of the bill for the note; and the bill failing of its object in part, to the extent of that failure Bradford has the right to be remitted to his lien as upon the original demand.—See Kean *et al.* v. Dufresne, 3 Serg. & Rawle 233.

It is said, as Bradford files no cross bill, he cannot enforce his lien in this suit, but can only pray to be dismissed the court. This is true. He, however, is pursuing his remedy at law, and does not ask the aid of the court of equity.

It results from what we have said, that the decree of the chancellor must be reversed, and the bill of the complainants must be here dismissed, but without prejudice to their filing a bill to obtain a title upon tendering the balance of the purchase money and the costs of the pending common-law suit, should Bradford refuse to accept the money and execute a title according to the stipulations of Killough's bond. The complainants below must be charged with the costs of this court and of the court below.

Decree accordingly.