## NEWSOME et al. *vs.* COLLINS.

[BILL IN EQUITY TO SET UP AND ENFORCE VENDOR'S LIEN ON LAND.]

1. *Vendor's lien; what sufficient to charge purchaser with notice of.*—A bond for titles only, held by the vendee of land, is sufficient to charge the purchaser from him with notice of the vendor's lien for the unpaid purchase-money.

2. *Same; when vendor may be deprived of.*—A vendor of land should not be deprived of his lien for the purchase-money, unless declarations made by him, were calculated to, and did, mislead the subsequent purchaser.

APPEAL from the Chancery Court of Talledega.
Tried before the Hon. S. K. McSPADDEN.

THIS was a bill in equity filed by appellee, against appellants, to subject certain lands, described in the bill, to complainant's lien for the unpaid purchase-money therefor. The defendant, Newsome, pleads that he is a *bona fide* purchaser, for a valuable consideration, without notice, from J. S. Lane, who was in possession of the land at the time of the purchase, and that he paid for the same before notice; and also, that complainant is estopped from setting up any claim upon said land, as against him, by reason of declarations, and a conversation which took place between defendant and complainant at the time of the sale. Both pleas are controverted.

The conversation relied on is thus stated in (defendant) appellant's answer : " Respondent avers that so far from having any notice or knowledge of said pretended lien, or of the non-payment of the purchase-money, he was induced, by the conduct and statements of complainant, to make said purchase, under a full belief that Lane's title to said land was good, and that complainant had no claim whatever upon it; that complainant was at the residence of said Lane, in company with Barrett and respondent, and said Lane, at the time when respondent went to look at said lands, and to try to purchase the same ; that Barrett was

there for the same purpose; that after a conversation among the said parties, upon the said subject had progressed some what, Barrett said there was more land in the tract than he wanted, whereupon complainant replied to him in the following language, as nearly as respondent recollects: *" Don't let that stop you from trading, gentlemen, buy the land; if there is more than you want, I'll take it off your hands. Just run the lines where you please; I'll take all you don't want and pay the money for it; I've got the money and will take it at what you give for it."* Nothing was said at that time by complainant about any lien or claim on the land.

Collins, in his deposition, denies the conversation, and says that he offered to take back some poor piney woods land, at $3 per acre, and credit the amount on the note he held against Lane, and offered to do nothing except as above stated.

*Harman,* witness for complainant, testified that he was not present at the time the conversation, above referred to, took place, but " that he saw Newsome immediately after fixing up the trade, and asked him what he had done about titles, to which Newsome replied that he had Lane's bond and Gen. Huey as security, which he thought would make it all right; that Newsome said that Huey said that Collins had refused to take Confederate money for the original purchase-money, (by Lane from Collins,) but Collins, if he did not mind, would be glad to get it; thinks he told him then, that Lane had not paid Collins the purchase-money."

*Ragland,* witness for complainant, testified, in substance, the same as Harman, and in addition, testified that Newsome said to him a short time after the trade, that *Lane could not make him a good title, because Collins refused to take Confederate money for the original purchase-money."*

*Huey,* a witness for defendant, testified, in substance, that Newsome was a refugee from Tennessee; that he knew nothing tending to show that Newsome had any notice of the lien, or claim, of Collins, either at the time of the purchase, or the time of the payment of the purchase-money. *" Lane's wife was absent in Georgia at the time the deed was executed; Newsome insisted on the relinquishment of dower by*

42

*Lane's wife, and to satisfy him I proposed, or consented, to join said Lane in making a deed, and did so, assuring Newsome that there would be no trouble on that score.* It was not until 1865, that I became aware of Collins' lien, or the responsibility I had incurred by going on said *bond.*"

*Barrett,* witness for defendant, testified, in substance, about the same as Newsome, (who testified in his own behalf to the conversation as heretofore set out,) and that at the conversation referred to, Collins said nothing whatever in relation to any lien or claim.

The other facts upon which the case turns will be found in the opinion.

TAUL BRADFORD, for appellant.—The facts of this case are strikingly like the facts in the case of *Burns v. Taylor et al.,* 23 Ala. 272.

The vendor's lien in that case was lost, and how? The purchaser made the inquiry the law required of him to make, and " Burns advised him to buy at the price he afterwads gave," and further said, " there would be no difficulty about the title to the land ;" and these declarations of Burns being construed to mean that he neither had, nor knew of, any lien in the way of the purchaser, Burns was therefore held to have been estopped from asserting his equity against the purchaser whom he had advised to purchase, and who, in a different aspect of the case, would have been a victim of his own imposture.

In the case before the court, suppose that Collins would have been innocent, and would have been entitled to assert his lien, in the event that he had remained silent when Lane and Newsome were talking over the land trade in his presence, does it follow from this absence of any requisition of the law binding him to assert his lien, that he may not declare himself, and in such a way, as to induce Newsome to believe that he (Collins) certainly had no sort of claim or lien upon the land, and to go on and make the purchase ?

There is a vast difference between an authorized silence, in such a case, and an avowal totally inconsistent with the pretensions afterwards made in the court of chancery.

If Newsome was put to his inquiry, under the law, of

whom ought he to have inquired? Of none, so safely, as of Collins. Collins was present at the negotiation, and though nothing was said to him about the title, he chose to declare himself, and to insist on Newsome making the purchase. He said, in substance, as shown by Barrett's deposition, " trade for the land ; if there's more than you want, I'll take part of it; run the lines where you please ; I have the money to pay for it ; I don't need the land, but I'd rather have it than the money." He did not say that he had no lien ; but he wanted to buy the land as an investment of money for which he had no use. Why should he have desired to invest twice in the same piece of land? The lines were to be run where Newsome pleased, and it did not matter with Collins where.

There is but one interpretation to be put upon the language and conduct of Collins, and that is : That he was eager to have Newsome purchase the land, was willing to aid him in the purchase, and knew of no reason, arising out of his own rights, or the rights of others, why Newsome should not purchase. Does not the evidence show plainly that Newsome was inveigled into the transaction by Collins ; and, in view of this fact, is it equitable to allow Collins to be unaffected by what has turned out in this case to have been the grossest fraud? Did not the language and conduct of Collins amount to this : So far as I know, the title to the Lane plantation entire, is good? And does not a declaration that a title is " good," mean that it is a perfect title and free from all incumbrances ?— *Smith v. Robertson*, 23 Ala. 312 ; *Thrasher & Titchel v. Pinkard's Heirs*, 23 Ala. 616.

Let it be borne in mind that the conversation above alluded to, was had at the residence of Lane, and on the premises upon which it is sought to fasten Collins' lien as vendor.

The facts set up in the answer of the respondent below, the appellant here, are incontestably proved. The complainant below, Jeremiah Collins, seeks to avoid the force of them, by attempting to show by the witnesses, Harman and Ragland, that the appellant knew of the existence of complainant's lien before the payment of the purchase-

money; but this he fails to show, as will be seen by comparing their testimony with Huey's. They manifestly used the expression, "bond for titles" instead of "deed"—as they speak of Huey having signed the "bond," when, it is shown, he only signed the deed, and for reasons that he gives. The conversation of which they speak must have occurred after the payment of the money and the execution of the deed. But, under the authorities, if the lien had been waived, the subsequent notice amounted to nothing.

J. B. MARTIN, *contra.*—1. The bill is filed to enforce a vendor's lien, against the original and a sub-purchaser, holding only a "bond for titles" from the vendor. That the relief is clear, see 2 Story Eq. § 1218; *Conner v. Banks,* 18 Ala. 41; *Kelly v. Payne, ib.* 371.

2. When the vendee only holds a "bond for titles," conditioned to convey, upon the payment of the purchase-money, this, of itself, operates notice to third parties.— *Bradford v. Harper et al.,* 25 Ala. 337.

3. The burden of showing that a party is a *bona fide* purchaser without notice, when the original vendee only holds a "bond for titles," is upon the purchaser.—2 Story's Eq. Jur. § 1224; *Bradford v. Harper, supra.* And if a sub-purchaser sets up a waiver or abandonment of the lien, by the vendor, the burden of proof is upon such sub-purchaser. And if any doubt exists, the lien attaches.—2 Story's Eq. § 1224; *Garson v. Green,* 1 Iser. Ch. 308–9.

4. A vendor's lien is an unrecorded mortgage, and an equitable lien, not required by law to be recorded; and is the only one not so required.—11 Ala. 412. The object of recording liens and conveyances, is to operate notice of their existence, and to afford to a purchaser the means of informing himself as to the title he is buying, and it is his duty to examine the records.

We insist that our lien was not required to be recorded, and the fact that only the bond of Collins for titles was out, operated notice to the world of the existence of the lien.

But Newsome, one of the appellants, insists that Collins

Newsome et al. v. Collins.

waived his lien, by making declarations which induced him to purchase. To that we say—

I. That if Newsome relied upon the statements made by Collins, the appellee, at the time of the purchase, as set up in his answer, why did he (Newsome) afterwards, in talking to the witnesses, Ragland and Harman, say that he had one Huey as security for a good title? And why did he say, further, to the same witnesses, that he took Huey as security for a good title, because the appellee would not take Confederate money for the original purchase-money? See depositions of Ragland and Harman.

II. That a bond for titles was first given by Lane to Newsome, see not only the evidence of Ragland and Harman, who swear to what Newsome said; but see, also, the evidence of Huey, who is a witness for respondents, and says that a "bond for titles" was given, and deposited with him, for a deed to be made.

III. There is no proof that the land here sued for was included in the twelve hundred acres bought by Newsome from Lane, at the purchase of which they say Collins was present. There is no proof that Collins knew, or had any idea, at that time, that the land here sued for was contemplated in the purchase by Newsome from Lane, at the time appellant insists Collins was present.

IV. Unless the particular land mentioned in this bill was mentioned, and an express waiver of lien or fraudulent representation made at the time of the purchase, which induced the purchase, then the complainant is entitled to relief.

Here it is clear that Newsome relied upon Huey's assurance of title, and not upon the mere casual remarks of Collins, made at the time Newsome bought from Lane.

Collins was not compelled to disclose his title or lien. If it had been an unrecorded mortgage, required to be recorded by law, then his silence would have been *suppressio veri*, with a fraudulent intent, and his remarks, at the time of Newsome's purchase, would have been calculated to mislead, provided Newsome had relied upon the remarks as an inducement to the purchase. This he did not do.

Newsome and the witness, Barrett, both say that they

never heard of Collins' lien for the unpaid purchase-money, until 1864; and yet the witnesses, Ragland and Harman, both swear that they told Newsome and Barrett, soon after Newsome's purchase from Lane, of the existence of the lien of Collins; and that the purchase was made in 1862. Collins positively denies the conversation set up by Newsome; then we have the evidence of Ragland and Harman, two disinterested witnesses, against Barrett.

In *Burns v. Taylor*, (23 Ala. 255,) the party holding the vendor's lien was in the actual possession of the land, and advising the purchaser to make the purchase, assuring him that there would be no difficulty about the title, and afterwards delivered up the possession of the land to the agent of the purchaser. This is a very different state of case from the one at bar. The purchaser, in *Burns v. Taylor, supra,* relied upon the statement of the party holding the lien; his possession and representation induced the purchase. But in the case at bar, the appellant, Newsome, did not rely upon the mere casual remark of appellee, at his purchase, but required Huey to become surety for the title, and relied solely upon that, as the evidence shows. In addition to this, Collins did not know at that time what land was being sold. Collins only claims a lien on three hundred and twenty acres of land described in his bill. Newsome (the appellant) bought twelve hundred acres from Lane; and this twelve hundred acres was the subject of the purchase, at which they say Collins was present, when he made the remarks set up in his answer.

B. F. SAFFOLD, J.—The appellee, Collins, sold a tract of land containing three hundred and twenty acres to appellant, Lane, in 1847, and gave him a bond for titles when the purchase-money should be fully paid. In October, 1862, Lane sold to appellant, Newsome, a tract of twelve hundred acres, which included the land bought from Collins.

At the time of the sale to Newsome, Lane had not paid the purchase-money to Collins, nor has he done so since. The bill was filed by Collins to enforce the vendor's lien, and the decree was in favor of the complainant.

The lien of the vendor of real estate for the purchase-money, is wholly independent of any possession on his part. It attaches to the estate as a trust, equally, whether it be actually conveyed, or only be contracted to be conveyed.—2 Story's Eq. Jur. § 1218. Generally speaking, this lien exists, and the burden of proof is on the purchaser to establish that in the particular case it has been displaced intentionally, or waived by consent of parties.—*Ib.* § 1224. All the incidents of a mortgage attach to the lien, when the vendor has only executed his bond to make titles when the purchase-money is paid.—*Kelly v. Payne,* 18 Ala. 371; *Conner v. Banks, ib.* 42. The bond for titles held by the vendee is sufficient to charge a purchaser from him with notice of the vendor's lien for the unpaid purchase-money.—*Bradford v. Harper et al.,* 25 Ala. 337.

Unless the declarations attributed to Collins, by the witnesses, Barrett and Newsome, were made by him, and served to mislead and deceive Newsome, and prevent him from prosecuting further inquiries concerning the title of Lane, Collins has a vendor's lien on the land which he sold to Lane.

The testimony of Collins conflicts directly with that of Newsome respecting these declarations. Barrett confirms the statement of Newsome. The tract of land which was the subject of negotiation between Lane and Newsome, contained twelve hundred acres. It is not apparent from the testimony that Collins knew the portion on which he claimed a lien was to be included. If he did, his declaration, though having a tendency to mislead, was not of such conclusive character as to estop him. He might at that time have been willing to take Confederate currency, or a part of the land for his debt. He spoke in response to the assertion of Barrett, that he wanted only three or four hundred acres. If Newsome had known at the time that Collins held the legal title to one fourth of the tract he wished to buy, he would not so much have inferred that Lane was entitled to it, as that Collins was willing to enter into an agreement by which he might be paid.

But Harmon, Ragland and Huey say that Lane gave to Newsome a bond for titles, and the two former say, in ad-

dition, that Newsome told them Lane could not make titles, because Collins would not take Confederate money, but he had Huey on the bond, who, he supposed would make it good. The money was paid by Newsome to Lane in the spring of 1863. The deed to Newsome was executed in October, 1863. The substance of Newsome's answer to the third cross-interrogatory is, that he did not know of Collins' claim to a lien on the land until Collins told him in November, 1864. From all the testimony, we can not conclude that the appellant, Newsome, was mislead by the declarations of Collins, or that he ought not to be charged with notice of the vendor's lien.

The decree is affirmed.