# EDMONDS *vs.* TORRENCE.

[BILL TO ENFORCE VENDOR'S LIEN.]

1. *Vendor's lien ; when exists, and by whom may be enforced.*—A vendor who sells real estate and takes a promissory note for the payment of the purchase-money, and gives the vendee a bond for titles when the note is paid, has a lien on such real estate to secure the payment of the note, and if the vendor endorses the note to a third person the lien is transferred to the indorsee, and he may enforce the same in equity in his own name.

2. *Purchaser from one holding bond for title ; chargeable with notice of what.*—A party who buys the estate of such a vendee, and takes an assignment of the bond for titles, as the evidence of his purchase, is charged with notice that the purchase-money is unpaid, and is a lien on the estate. He will not be regarded as a *bona fide* purchaser for valuable consideration without notice.

3. *Principles applied to case at bar.*—D. sold land to F., giving him a bond

binding D. to make title when two notes, the amount and date of payment of which were recited in the bond, should be paid. D. transferred and endorsed the first of these notes to T. for valuable consideration. After both notes fell due F. sold to E., transferring to him D.'s bond for title, and reciting in the transfer that E. retained enough of the purchase-money to pay that due D. E. paid D. the last note, all the purchase-money claimed by him, and paid H.. who had the legal title to the land, the amount claimed by H. of F. By consent of D. and F., H. then made E. a deed to the land, and T., without having sued either F. or D. on the note transferred to T. by D., files his bill against E. D. and F., to subject the land to the satisfaction of the lien of the note held by him. T. had no notice of the sale to E. until it was consummated. E. had no notice of the trade between T. and D.— *Held*, that E. was not a *bona fide* purchaser for a valuable consideration, and without notice, and that the chancellor rightly held the land, subject to the satisfaction of the lien of note made by F., and transferred by D. to T., in the hands of T.

APPEAL from the chancery court of Macon.
Heard before Hon. B. B. McCRAW.

This was a bill in equity, filed by appellee against Edmonds, Daniel and Foster, to enforce a vendor's lien. Daniel and Foster refusing to join in the appeal, were severed, and the appeal prosecuted in the name of Edmonds alone.

The facts, as gathered from the bill, exhibits, answer of Edmonds and admissions of counsel, are as follows: On 9th of January, 1858, Daniel sold the house and lot described in the bill, to Foster, executed a bond for titles, and took from Foster, for the purchase-money, two notes for $1,900 each, due respectively on the 1st day of January, in the years 1860 and 1861, with interest from date. The first note, which, at the date of the filing of the bill, remained unpaid, and stated on its face that it was given for the first installment of the purchase-money of the premises described in the bill. It was transferred and endorsed by Daniel for a valuable consideration, to the appellee, while Foster was in possession of the lands; one of the inducements offered by Daniel to the purchase of the note being that it constituted a lien on the land. Afterwards, and on the 29th day of June, A. D. 1863, Foster, who was then

in possession, sold the premises to appellant, and transferred to him Daniel's bond for title. This bond for titles recites that Foster had bought the house and lot from Daniel and given his two promissory notes for the purchase-money, each for $1,900, with the dates of payment as stated before, and that he transferred it to Edmonds and authorized Daniel to make him title, and that Edmonds retained $2,100 of the purchase-money to pay the amount due Daniel. The bill charges that Edmonds had notice of the existence of the lien of said note and its non-payment, and after making proper parties defendant, prays that the house and lot may be sold for the satisfaction of said lien, &c., &c.

Edmonds sets up that he was a *bona fide* purchaser, for a valuable consideration, without notice, &c. His answer states that "at the time he contracted with Foster for the purchase of the house and lot, the legal title was in one Wm. Hora, who claimed that said Foster was indebted to him, and he would not consent to execute a conveyance until said indebtedness was paid, and said Foster authorized defendant to pay him out of the purchase-money. Defendant was also informed that Daniel held a note which had a lien on said house and lot, and that the said note was all of the outstanding and unpaid purchase-money. To pay the indebtedness to Hora and the note to Daniel, defendant retained $2,100 of the purchase-money. Afterwards defendant paid Hora, and Daniel came from Eufaula, where he was residing, to Tuskegee, when defendant paid him the amount due on said note, and by consent and authority of both Daniel and Foster, Hora executed to defendant a deed. Nothing was said or done, either at the time of said purchase or at the time the defendant paid the said Daniel, or at any time before defendant had fully paid for said house and lot, and the deed therefor had been executed by said Hora, calculated to put defendant on inquiry as to any of the purchase-money being unpaid, or that there was any note given for the purchase-money, outstanding and unpaid, other than the note held

by Daniel, which this defendant paid. On the contrary, defendant, by himself and through his attorney, inquired if there were any liens whatever upon said house and lot, and were informed that there were none except said note held by Daniel. And said Daniel, at the time defendant paid him the amount due on said note, did not claim or assert that any other part of the purchase-money was unpaid."

Decrees *pro confesso* were taken against Daniel and Foster.

In the admissions of the solicitors, it is agreed that no suit was ever brought against Foster, or Daniel as endorser, on the note whose lien is here sought to be enforced; "that complainant had no knowledge of the sale of the house and lot to Edmonds until the same was consummated; that after Edmonds purchased the lot from Foster, he (Edmonds) procured a deed to be made him by Hora, with the knowledge of and without objection of said Daniel; that Daniel was present at the time the transfer of his bond for title to Foster was made to Edmonds, and received from him payment of the second note described in the bond for titles, and consented that Hora, who held the legal title, should convey to Edmonds; that Edmonds knew nothing of the trade between Daniel and appellee, Torrence." The agreement then concludes, that "it is expressly understood that complainant does not intend, by joining in these admissions, to secure to Edmonds the benefit of his answer as evidence, but on the contrary, complainant expressly objects to its being received as evidence. It is also understood that Edmonds makes no admission of notice that said note was outstanding, &c."

The cause was submitted for final decree on bill and exhibits, decrees *pro confesso*, answer of Edmonds, and the written admissions of the solicitors of appellee and Edmonds.

The chancellor decreed that the note constituted a lien on the land, and after ascertaining the amount due thereon,

ordered it paid within a reasonable time, in default of which the land was to be sold, &c., and hence this appeal.

CLOPTON and FERGUSON, for appellant.—An innocent purchaser, without notice, is always protected against a latent, or an implied trust.—1 Story's Equ. Juris., §§ 409, 1228. The lien of a vendor for the unpaid purchase-money is such a trust.—2 Story Equ. Juris., §§ 1217–19. This lien is in favor of the *vendor*, and, if a bond for titles is given, this bond is notice that the purchase-money is unpaid; but it is not notice that either of two notes given for the purchase-money and described in the bond, has been transferred to a third person. When, then, the vendor himself is present, and produces only one of two notes described in the bond, and that the note last due, and the vendor claims from the sub-purchaser the payment of that note and no more, and, upon the payment of that amount consents and authorizes the legal title to be conveyed to the sub-purchaser, then the sub-purchaser has done all which the notice given by the bond for titles required of him, or charged him with. The notes described in the bond being payable to Daniel, the vendor, the presumption was that he still held all that were unpaid; and the burden is upon the complainant to prove that Edmonds, the sub-purchaser, had notice of the transfer of one of them to him.

If Foster, the maker of the notes, had paid both notes to Daniel, his vendor, and Torrence, the transferee, had sought to hold Foster liable upon the note transferred to him, the burden would have been upon him to prove Foster had notice of the transfer to him, otherwise the payment to Daniel would be good. Then, also, the payment by Edmonds, the sub-purchaser, to Daniel, without notice of the transfer to Torrence by authority of Foster, would have been equally good. The assignment of the bond for titles shows that Edmonds was enquiring about the unpaid purchase-money, and all the notice he had was of unpaid purchase-money due to Daniel, and he paid all that Daniel claimed as unpaid, or that he had notice was unpaid.

The bond for titles not charging him with notice of any transfer of one of the notes, but only of purchase-money due and unpaid to Daniel, the vendor, the first note in the bond having been long past due, and therefore presumed to be paid, more especially as only the last note described in the bond was produced and claimed as unpaid, and, having applied to the only persons to whom the notice given by the bond for titles required him to apply—that is, the vendor and vendee—and no notice having been given of the transfer of the first note, or that it was outstanding, Edmonds is a purchaser for a valuable consideration without notice, and has an equity equal to that of the complainant, and, having also obtained the legal title, the equity and legal title of the appellant must prevail over the mere equity of the appellee.—Story Equ. Juris. § 64, c. Such person, it is said, is a favorite in the eyes of courts of equity.—1 Story Equ. Juris. § 434; *Houston v. Stanton*, 11 Ala. 412.

In *Hall v. Click*, 5 Ala. 363, it was held that an assignee of the note given for the purchase-money of land, could not enforce the equitable lien of the vendor, when the note was assigned by the vendor without recourse, on the ground that the note, having been passed off without recourse on the vendor, the equitable lien did not follow the transfer.

In *Roper v. McCook et al.*, 7 Ala. 318, it was held, however, that where a note given for the purchase-money of land was endorsed by the vendor, the assignee did not lose his equitable lien, because he neglected to sue the maker to fix the liability of the endorser; but this decision was upon the ground that the endorser, who was the vendor, by a voluntary payment might again become the proprietor of the note, and assert the lien in his own name.

From these decisions it follows that an assignee of a note given for the purchase-money of land, can enforce the equitable lien, because he is substituted to the equitable of lien of the vendor, as was remarked in *Roper v. McCook et al.*, *supra*. The assignee claims under and

through the vendor; and hence, as was decided in *Coster's Executors v. Bank of Georgia et als.*, 24 Ala. 37, the assignee can not stand in a higher or better position than the original vendor occupied. Whenever, then, the original vendor can not assert an equitable lien in his own name, the assignee of the note can not, particularly when the note is endorsed by the vendor, and released from said endorsement by the failure of the assignee to sue the maker. It is too clear for argument that Daniel, the vendor, could not, by a voluntary payment of Torrence's note, enforce the lien against Edmonds. Neither can Torrence, without proving that Edmonds had notice of the transfer of the note to him.

N. S. GRAHAM, and J. E. COBB, *contra.*—The complainant, Torrence, being the owner of the lien note, which is the foundation of this cause, can enforce the lien.—*Wells v. Morrow*, 38 Ala. 125; *Magruder v. Campbell*, 40 Ala. R. 611.

Failure to sue at law, does not affect the right to enforce the lien in equity.—*Haley et al. v. Bennett*, 5 Porter, 453; *Roper v. McCook & Robertson's Adm'r*, 7 Ala. 319.

That Torrence's lien was subsisting and perfect, so long as Foster held the land, can not be doubted. Foster had no legal title, but a bond only; and "one claiming by purchase from a person who has nothing more than a bond for title, will stand in the same situation as his vendor did, and will be subjected to the same equities in favor of the original vendor."—*Fenno v. Sayre & Converse*, 3 Ala. 458; *Bradford v. Harper et al.*, 25 Ala. 337. And, further, "a vendee of land must examine the titles of his vendor, and is charged with notice of every fact which such examination would disclose."—*Witter, pro ami, v. Dudley*, 42 Ala. 617. In this case, an examination of the bond, the only muniment of title which Edmonds received from his vendor, would have disclosed the existence of the note sued on, since it is clearly and distinctly set out in the bond; and, being advised of the existence of the note, Edmonds

is charged with notice of its lien, and whether or not it had been paid.

The rule which protects *bona fide* purchasers, does not apply to purchasers of merely equitable titles.—2 Story's Equity Jur. § 1502; 7 Ala. 751.

Foster was a trustee for Torrence, which fact Edmonds was bound to know, and "a purchaser from a trustee purchases at his peril."—Sugden on Vendors, chapter 4, page 211; *Green v. Slayter*, 4 Johns. Ch. R. 46; *Murray v. Ballou*, 1 John's Ch. R. 574.

Had Daniel held the note, the foundation of this cause, at the time of the transfer of the bond for title to Edmonds, the lien would not have been lost, because Edmonds made no inquiry, and the relation between Daniel and Edmonds was not such as to impose upon the former the obligation of imparting information not asked for.

In other words, the mere presence of Daniel, and his consent that legal title be made to Edmonds, does not, without more, relieve Edmonds of the necessity to make inquiry. There was nothing in the conduct of Daniel inconsistent with the idea that the lien of the first note was to continue.

But, it is submitted, that the conduct of Daniel, whatever it may have been, could not affect Torrence's lien— that is, the conduct of Daniel *after* he had sold the note to Torrence.—*Rowland v. Day*, 17 Ala. 681.

From all the facts, Torrence had the superior equity, and hence the acquisition of the legal title by Edmonds can not benefit him.

PECK, C. J.—1. From the admissions contained in the record, it is very clear the promissory note for $1,900, made an exhibit to the bill, was, in the hands of the defendant, Daniel, a lien upon the real estate sold by him to the defendant, Foster, consisting of a house and lot, in the town of Tuskegee, Macon county; and it is equally clear that the endorsement of said note by said Daniel, to the complainant, transferred said lien to him, and as the in-

dorsee of said note, he may enforce the said lien, in equity, in his own name.— *Wells v. Morrow*, 38 Ala. 125 ; *Kelly v. Payne*, 18 Ala. 371 ; and *Connor et al. v. Banks*, same vol. 42.

2. The subsequent sale of said real estate, by said Foster, to the appellant, will not defeat said lien, unless he shows that he was a *bona fide* purchaser for valuable consideration, without notice. The appellant, at the time of his purchase, knew that Foster bought the said premises of the defendant, Daniel, and that he had given his notes to secure the payment of the purchase-money, and only held Daniel's bond for titles, when the said notes should be fully paid. This he knew, because, as the only evidence of his purchase, he received from Foster said bond with his assignment on the same, in the words and figures following, to-wit : "For and in consideration of the sum of "fifty-five hundred dollars, I, Benjamin F. Foster, do "hereby transfer, assign and set over unto William Ed- "monds, the foregoing bond for title, and authorize James "L. Daniel to make titles to said William Edmonds. "Thirty-four hundred dollars of said money paid me in "cash, and twenty-one hundred dollars retained by said "Edmonds, to pay balance of purchase-money due said "James L. Daniel. Witness my hand and seal, June 29, "1863."

(Signed)    BENJ. F. FOSTER, [seal.]

The said bond is made an exhibit to the complainant's bill, and its condition shows that Foster bought said property of said Daniel, and gave his two notes for the purchase-money, each for the sum of $1,900, one payable the first day of January, 1860, the other payable the first day of January, 1861 ; and it is admitted the first of said notes was endorsed to the complainant, before the appellant purchased the said premises of said Foster, and is the note made an exhibit to the bill of complaint. This was notice to the appellant that Foster bought the said premises of Daniel on a credit, and that said note was given to secure, in part, the payment of the purchase-money, and, if not

paid, was, at the time of his purchase of Foster, a lien upon the property so purchased, and although past due, he was bound, at his peril, to inquire, and to determine, for himself, whether the same had been, in fact, paid. This knowledge, on his part, was sufficient to destroy his claim, to be regarded as a *bona fide* purchaser, for valuable consideration without notice.—*Bradford v. Harper et al.*, 25 Ala. 337; *Newsome et al. v. Collins*, 43 Ala. 656.

There is no evidence in the record, that the appellant made any inquiry on this subject. This was his fault, and he must take the consequences of his negligence. The answer was not evidence for the appellant; it is not on oath, but if it was, it fails to establish the defense, upon which he relies to defeat the complainant's equity; that he was a *bona fide* purchaser, for valuable consideration without notice. The answer states that appellant was informed, at the time of his purchase, that said Daniel held a note, which was a lien on said house and lot, and that said note was all the purchase-money outstanding and unpaid, but it does not state how or by whom he was so informed, or that he made any inquiry as to the truth of said information.

The answer further states that, neither at the time of said purchase, nor at the time he paid said Daniel, or at any time before the appellant had fully paid for said house and lot, and the execution of the deed to him, by William Hora, nothing was said or done calculated to put him on inquiry, as to any of the purchase-money being unpaid, or that there was any note given for the purchase-money, outstanding and unpaid, other than the note held by said Daniel, which was paid by him out of the money agreed to be paid to said Foster, retained by him for that purpose; that, on the contrary, he, by himself, and through his attorney, inquired if there were any liens, whatever, upon said house and lot. Now, all this is very inconclusively and very cautiously said, and fails to show that the appellant acted even with common prudence in this matter. It is not stated of whom inquiry was made, or what

was the answer to said inquiries. If the appellant had inquired of said Foster, he could have told him the first of said notes, the one indorsed to complainant, was not wholly paid, and if he had inquired of said Daniel, he would have informed him, the said note had been indorsed to complainant. Common prudence and ordinary diligence would, it seems to us, have suggested the propriety and necessity of making these inquiries, and if they had been made, they would have saved the appellant from the trouble, into which he seems to have fallen, and, as it is the result of a want of proper care and caution on his part, he must suffer the consequences of his own negligence.

The chancellor held that the complainant was entitled to the relief prayed, and decreed that said note was a lien upon said house and lot, and after ascertaining the sum due on it, ordered the same to be paid, within a time named, and in default of payment, the register should sell the premises, &c. This decree, we think, free from error, and it must be affirmed at the appellant's cost.